# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CINDY GATES,

    Plaintiff,

v.                                            No. CIV 00-1426 LFG/WWD

SAN JUAN COUNTY, NEW MEXICO,
    d/b/a San Juan County Detention Center;

and JESUS "JESSE" MONCLOVA,
    Individually and in his official capacity;

    Defendants.

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Defendants' "Motion for Summary Judgment on Section 1983 Claims," filed December 17, 2001 [Doc. 20.] The Motion, Plaintiff's Response and Defendants' Reply were filed together as a package, in accord with the District's local rules. D.N.M. LR-Civ. 7.3(a). Oral argument is not necessary; the matter can be decided on the briefs. For the reasons given below, the motion is granted. The Court declines to exercise pendent jurisdiction over the asserted state law claims, and Plaintiff's Complaint, therefore, is dismissed without prejudice.

## Background

Plaintiff Cindy Gates' ("Gates") "Complaint for Civil Rights Violations, Tort Claims, and Damages" alleges, in part, that Defendant Monclova, while working as a corrections officer at San

Juan County Detention Center ("SJCDC"), sexually assaulted Gates who was an inmate there. [Doc. 1.] Based on these allegations, Gates brings both § 1983 claims and state law tort claims against Defendants. Defendants moved for summary judgment on the federal claims on the grounds that Gates did not exhaust her administrative remedies with respect to any complaints of sexual abuse, and that, therefore, under the Prison Litigation Reform Act ("PLRA"), Gates' claims should be dismissed. Attached to Defendants' Motion is affidavit testimony that SJCDC had an internal grievance procedure in effect at all pertinent times regarding Gates' allegations and that Gates did not file any complaints concerning this matter. [Doc. 22.]

In response to Defendants' Motion, Gates raised a number of arguments as to why she should not be required to exhaust her administrative remedies before filing this lawsuit. [Doc. 23.] Gates' primary position is that the PLRA's exhaustion requirement does not apply to assault or excessive force claims of this nature. In support of this proposition, Gates relies on a fairly recent decision by the Second Circuit Court of Appeals, on which the Supreme Court has accepted certiorari. Nussle v. Willette, 224 F.3d 95, 101 (2d Cir. 2000), *cert. granted*, 121 S. Ct. 2213 (U.S. 2001). Gates does not dispute the fact that she did not file a grievance over this matter.[1] [Doc. 23 at p. 11.] Instead, she argues that had no administrative remedies were available to her within the meaning of the PLRA's exhaustion requirement, that she informed Defendants of the allegations by complaining to

---

[1] In Gates' response, she failed to present a "concise statement of the material facts as to which [she] contends a genuine issue does exist." D.N.M. Civ-LR 56.1(b). Although the arguments in her brief might be read to attempt to dispute some Defendants' proposed material facts [Doc. 20 at pp. 1-2], she presented no affidavit or other record evidence to demonstrate a genuine issue in dispute. In her response to the Motion, her attorneys only refer to what Gates would present at an evidentiary hearing. This, of course, does not comply with a responding party's obligations under Rule 56. Gates did attach a single page of deposition testimony by a another inmate in a different lawsuit regarding that inmate's experiences with the grievance procedure at SJCDC. However, such testimony by a different inmate does not raise a genuine issue with respect to any efforts Gates may have made in filing a grievance.

2

the FBI, "rather than on an official grievance form," and/or that she was denied access to the grievance procedure at SJCDC.

### **Summary Judgment Standard**

Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995). The party moving for summary judgment has the initial burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986).

Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment, nor will argument or contention suffice. Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). A party opposing the motion must submit evidence by way of affidavit, answers to interrogatories, admissions, deposition testimony, documents or other admissible evidence to demonstrate the presence of a factual dispute on a material issue. Fed.R.Civ.P. 56(e).

"The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient to create a dispute of fact that is 'genuine.'" Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997). Summary judgment is appropriate only if there not sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that party. Anderson, 477 U.S. at 249, 106 S. Ct. at 2511. Thus, the Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id., at 251-52, 106 S. Ct. at 2512. In considering a motion for summary judgment, the Court construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion. Perry v. Woodward, 199 F.3d 1126 (10th Cir. 1999), *cert. denied,* 529 U.S. 1110, 120 S. Ct. 1964 (2000).

## Discussion

## Exhaustion of Administrative Remedies

The PLRA requires exhaustion of administrative remedies before filing a § 1983 lawsuit.

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The Prison Litigation Reform Act of 1995 amended § 1997e(a) and specifically strengthened the exhaustion requirement. *See* Garrett v. Hawk, 127 F.3d 1263, 1264-65 (10th Cir. 1997) (the pre-PLRA version of § 1997e provided for a more limited exhaustion requirement), *overruled on other grounds by* Booth v. Churner, 523 U.S. 731, 121 S.Ct. 1819 (2001). For example, the 1995 amendments made exhaustion mandatory rather than discretionary and broadened the scope to include all federal law claims rather than just § 1983 claims. *See* 42

U.S.C. § 1997(e) (1994). The PLRA was passed not only to reduce frivolous prisoner lawsuits, but also to reduce the intervention of federal courts into the management of the nation's prisons. Freeman v. Francis, 196 F.3d 641, 644 (6th Cir. 1999).

Gates argues, in part, that she was not required to exhaust her administrative exhaustion under § 1997e(a) for a sexual assault claim because isolated claims of intentional sexual assault committed by corrections officers do not fall within the term "prison conditions." Section 1997e(a) does not define the term "prison conditions" but another section of the PLRA does. Section 3626(g)(2) of the PLRA provides:

> the term 'civil action with respect to prison conditions' means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of action by government officials on the lives of person confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

18 U.S.C. § 3626(g)(2). This legislation, 18 U.S.C. § 3626(g)(2), was amended as part of the same legislation as § 1997e. "It is generally recognized that when Congress uses the same language in two different places in the same statute, the words are usually read to mean the same thing in both places." Freeman, 196 F.3d at 644(relying on Commissioner v. Lundy, 516 U.S. 235, 250, 116 S. Ct. 647 (1996)).

The Tenth Circuit has not expressly decided the issue of whether the term "prison conditions" includes intentional acts of excessive force or sexual assault by a corrections officer, thereby requiring exhaustion of administrative remedies. However, in Garrett, the Tenth Circuit referred to legislative history behind the revised version of 1997(e), including comments that the "new administrative exhaustion language in [PLRA] will require that all cases brought by Federal inmates *contesting any*

*aspect of their incarceration* be submitted to administrative remedy process before proceeding to court." Garrett, 127 F.3d at 1265 (emphasis added). Therefore, it seems likely that the Tenth Circuit view will be that the term "prison conditions" encompasses alleged sexual assault and/or excessive force by prison guards which could be considered "an aspect of [the inmate's] incarceration."

There is a split in authority on this issue with respect to the circuit courts that have decided this question. Nussle, 224 F.3d at 100. Only the Second Circuit, in Nussle, has held that assault or excessive force are not encompassed within the term "prison conditions." Id. at 100-05. In contrast, the Third, Sixth, Seventh and Eleventh Circuits have decided that "prison conditions" do include assault or excessive force claims and that exhaustion, therefore is required. Larkin v. Galloway, 266 F.3d 718, 722-23 (7th Cir. 2001) (rejecting argument that a single violent act or incident does not fall within the concept of "prison conditions" and that claims regarding acts of individual officers are exempted from exhaustion); Higginbottom v. Carter, 223 F.3d 1259, 1260-61 (11th Cir. 2000) (claim of excessive force is claim brought with respect to "prison conditions"); Booth v. Churner, 206 F.3d 289, 293-98 (3d Cir. 2000) (PLRA language read to include actions ranging from excessive force to actions by prison officials not to make basic repairs or to deny a prisoner food, heating or medical attention, all of which make the lives of prisoners worse ), *aff'd*, 532 U.S. 731, 121 S.Ct. 1819 (2001); Freeman, 196 F.3d at 643-44 (6th Cir. 1999) (inmate's claim of excessive force involved "prison condition").

In Freeman, the Seventh Circuit reasoned that:

A broad exhaustion requirement that includes excessive force claims effectuates [the] purpose [of the PLRA] and maximizes the benefits of requiring prisoners to use prison grievance procedures before coming to federal court. Prisons need to know about and address claims of excessive force as they would any other claim concerning prison life so that steps may be taken to stop problems immediately if they exist.

Freeman, 196 F. 3d at 644. The Seventh Circuit also found unconvincing an inmate's attempt to avoid the exhaustion requirement by molding a sexual assault claim into an "isolated, event, a freak occurrence that will not be repeated." Smith v. Zachary, 255 F.3d 446, 449 (7th Cir. 2001), *petition for cert. filed Sept. 26, 2001*.

> An assault by a prison guard could be a by-product of systemic problems, including poor hiring procedures, insufficient training and supervision, or an inadequate procedure for responding to prison riots or insubordinate behavior by prisoners. Given that part of a prison guard's job is to control inmates, the use of excessive force in achieving this end can be viewed as a management failure, not only as a random act of violence. We read the term 'prison conditions' in context – not only as it relates to other statutory provisions, but with regard to the real-world environment in which § 1997e applies.

Id. at 449-450 (internal citations omitted).

This Court elects to follow the majority of circuit courts that have decided this question. Moreover, this decision is supported by the Tenth Circuit's implied view that exhaustion of administrative remedies is required under circumstances such as these.[2] Here, it is undisputed that Gates' civil rights claims involve an alleged sexual assault by a corrections officer while she was an inmate at SJCDC, that a formal grievance policy was available to Gates at SJCDC and that she did not submit any grievances about this matter before filing her lawsuit. Her failure to utilize SJCDC's grievance process before filing this lawsuit warrants dismissal of her the civil rights claims related to sexual assault by a corrections officer.

Moreover, the fact that Gates seeks monetary damages and the institutional administrative proceeding could not provide her this requested relief, does not excuse her non-compliance. The

---

[2]Like the Seventh Circuit, in Larkin, I acknowledge that the United States Supreme Court may decide this issue differently based on *certiorari* granted in Nussle. For now, however, the reasoning set forth in decisions by the Third, Sixth, Seventh and Eleventh Circuits is more compelling than the reasons underlying the decision reached by the Second Circuit in Nussle.

7

Supreme Court laid to rest the argument that exhaustion is not required when only monetary damages are sought. Booth v. Churner, 121 S. Ct. at 1825. In Booth, as here, the plaintiff inmate alleged that he was physically assaulted and abused by a correctional officer in violation of his Eighth Amendment rights. Still, the Supreme Court required administrative exhaustion as a precondition to filing a civil rights complaint. Id.

Gates' other arguments in opposition to the Motion for Summary Judgment also are unavailing. Gates contends, for example, that Defendants "deliberately interfered with and overrode the established grievance procedure" at SJCDC, thereby preventing Gates from using the grievance process. [Doc. 23 at pp. 7-8.] Gates argues that she can establish at a hearing that Defendants and officers at SJCDC "routinely destroyed grievances file by inmates" and that filing a grievance could result in serious disciplinary action and/or retaliation against the inmate. Gates provides no record evidence to this effect, other than brief testimony by Gina Lynn Manning, another inmate, who states that Manning did not receive all of the grievance forms she requested. The testimony by Manning does not support Gates' argument. Moreover, argument by counsel in a legal memorandum and/or oral argument are insufficient to defeat summary judgment. Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1372 (3d Cir. 1996).

Gates also argues that she should not be required to exhaust her administrative remedies because it was an impossibility since she had been transferred to the New Mexico Corrections Department from SJCDC when she filed this lawsuit. [Doc. 23, at p. 8.] Gates' argument essentially is one of futility. The Supreme Court, in Booth v. Churner, rejected the argument that an inmate need not exhaust when no relief apparently was available to him through the grievance process. 121 S. Ct. at 1825. *See also* McCoy v. Gilbert, 270 F.3d 503, 510 (7th Cir. 2001) (rejecting argument that no

8

administrative remedies were "available" to inmate when the Bureau of Prisoner's 20-day window of opportunity to file a grievance had passed); Larkin, 266 F.3d at 723 (rejecting futility argument based on "broader view of the utility of prison administrative processes" taken by the Supreme Court in Booth. Exhaustion of all administrative procedures "that have authority to take some action in response to a complaint" is required, regardless of whether the procedure can provide the relief the inmate seeks.) Here, Gates does not demonstrate with record evidence that she could not have filed a grievance at or around the time of the alleged sexual assault, nor does she provide testimony that she could not have filed a grievance with the SJCDC when she later was housed at another facility. She merely asserts that she was incarcerated somewhere else when she filed her lawsuit. Gates' futility argument fails.

The Court also rejects Gates' alternative argument that she exhausted administrative remedies by having complained to the FBI. Gates provides no record evidence or legal precedent to support her position. The Seventh Circuit, in Freeman, rejected a similar argument. Freeman alleged that an investigation by the prison Use of Force Committee and the Ohio State Highway Patrol into the alleged assault satisfied exhaustion requirements. The Court disposed of this argument by concluding that "the exhaustion requirement in § 1997e(a) is directed at exhausting the prisoner's administrative remedies in the corrections system, and investigation by another agency does not satisfy the requirement of the statute." Freeman, 196 F.3d at 644.

## Conclusion

For all of the reasons set out above, this Court concludes that Defendants' Motion for Summary Judgment should be granted. Because the Court is dismissing Gates' federal claims, the Court declines to exercise pendent jurisdiction over any remaining state law claims.

9

**IT IS THEREFORE ORDERED THAT** Defendants' Motion for Summary Judgment [Doc. 20] is granted and that Plaintiff's Complaint [Doc. 1] is dismissed without prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge